[Cite as *State v. Soto*, 2025-Ohio-1788.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  | | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Andrew J. King, P.J. |
|  | : | Hon. Kevin W. Popham, J. |
| Plaintiff-Appellee | : | Hon. David M. Gormley, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024 AP 09 0031 |
| TRAVIS SOTO | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:        Appeal from the Tuscarawas County Court,
                                Case No. 24 CRB 0308-AB


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         May 16, 2025


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KRISTINE W. BEARD                     DAN GUINN
Assistant Prosecutor                  232 West 3rd Street, Ste. 312
125 E. High Avenue                    Dover, OH 44622
New Philadelphia, OH 44663

*Popham, J.,*

{¶1} Defendant-appellant Travis Soto ("Soto) appeals his convictions and sentences after a jury trial in the Tuscarawas County Court.

*Facts and Procedural History*

{¶2} N.W. and Soto had been in a romantic relationship and had been living together in N.W.'s apartment for the past two years. (T. at 63.)[1] On July 9, 2024, Soto became upset and accused N.W. of cheating on him. (*Id.* at 64.) While she was in the bedroom with her two minor children present, Soto entered and according to N.W he whispered in her ear: "he was going to tie me up and then put something in my mouth so no one would hear me scream and he'd kick me in the vagina until I bled." (T. at 64, 66, 68.) Soto further told N.W., "that if I fell asleep, he was gonna hit me every time I fell asleep, and…if I was smart when he gets in the shower I would leave and go to my boyfriend's house…." (T. at 67.)

{¶3} N.W. was afraid Soto would hurt her, as he had done so in the past. (*Id.* at 66, 69, 120.) When Soto got into the shower, she called 9-1-1 but immediately hung up out of fear that Soto would see her on the phone. (T. at 118, 121.)

{¶4} N.W. gathered her children and went to the Dennison Police Department. She told Officer Christopher Vespoint that she needed help, feared for her life, and was afraid to return home. (T. at 68.) She relayed the threats Soto made about tying her up and kicking her, which prompted her to flee. N.W. was visibly distressed and crying. (T. at 143.)

---

[1] For clarity, the transcript of Soto's jury trial held August 15, 2024, will be referred to as "T.__".

{¶5} Officer Vespoint agreed to accompany N.W. back to her residence. N.W. warned Officer Vespoint that Soto could be confrontational with the police and advised that he should not approach the residence alone. (T. at 69.)

{¶6} N.W. drove to the residence and remained in her vehicle as instructed. Officer Vespoint put the children in his marked vehicle and requested assistance from the Uhrichsville Police Department. Two Uhrichsville officers responded to the scene to assist. (T. at 73, 75.)

{¶7} When the officers arrived at the residence, Soto came out with his hands on his head, knelt, and repeatedly said, "Don't hurt me. Don't hurt me." (T. at 75.) He began yelling that his rights were being violated. (*Id.* at 76.) According to the officer, arresting Soto was a "[l]ittle more difficult than the average detaining or arresting someone." (*Id.*) Once they got to the officer's cruiser the officer testified that Soto "turned his body back towards the victim" and another officer had to assist him to get Soto into the police cruiser. (*Id.* at 76.)

{¶8} Soto represented himself at trial. He called Nicole Tice, who testified she did not find N.W. to be a liar. (T. at 89.) N.W. told Tice that Soto had been threatening her since she got home from work, that she was scared, and when Soto got into the shower, she and the children went to the police department. (*Id.* at 89 - 90.)

{¶9} Soto called N.W. to testify on his behalf. (T. at 97.) She testified Soto used Jobs and Family Services as his mailing address, telling them that he was homeless. (*Id.* at 98.) Furthermore, she admitted submitting an application to Tuscarawas Metropolitan Housing, but had not listed Soto as a resident. (*Id.*) N.W. admitted that if the housing authority discovered Soto was living with her, she could lose her home. (*Id.* at 98 - 99.)

{¶10} Soto also called Officer Collin Hickey to testify on his behalf. (T. at 154.) The officer testified he did not hear Soto make any threats to N.W. (*Id.* at 155.) He did recall Soto saying something but did not feel it was a threat or anything that he needed to address. (*Id.* at 155 - 156.)

{¶11} The jury found Soto guilty of resisting arrest and domestic violence. The judge sentenced Soto to 90 days on the resisting arrest conviction and 30 days on the domestic violence conviction. The court ordered the sentences run consecutively. The Judgment Entry filed August 16, 2024, also states:

> FINE: Waived
>
> COSTS: $130.00*
>
> *AND ANY ADDITIONAL COSTS INCLUDING, BUT NOT LIMITED TO, SHERIFF FEES, JUROR FEES, AND WITNESS FEES. ALL FINES AND COSTS ARE TO BE PAID BY DATE OF REVIEW HEARING [Nov. 7, 2024]. DEFENDANT SHALL CONTACT THE CLERK'S OFFICE FOR THE TOTAL AMOUNT DUE[2].

*Assignment of Error*

{¶12} Soto raises a single assignment of error:

{¶13} "I. THE APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE AND RESISTING ARREST WERE NOT SUPPORTED BY EITHER THE LEGALLY SUFFICIENT EVIDENCE OR THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

---

[2] The Tuscarawas County Court's Docket labels the $130.00 as a "Fine." *See* Docket Entry No. 90.

**{¶14}** The State suggests that this matter is moot, and the appeal should be dismissed, because Soto has satisfied the totality of the sentence imposed for his misdemeanor convictions.

*The Mootness Doctrine*

**{¶15}** Mootness is a jurisdictional question because courts are tasked with deciding adversarial legal cases and issuing judgments that can be carried into effect. *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). *See also United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Under the mootness doctrine, courts will not decide cases in which there is no longer an actual legal controversy between the parties. *In re A.G.*, 2014-Ohio-2597, ¶ 37. Because mootness is jurisdictional, a court must address it even if the parties do not raise the issue. *Rice*, 404 U.S. at 246.

**{¶16}** As the Supreme Court of Ohio has noted, "an event that causes a case to be moot may be proved by extrinsic evidence outside the record." *State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228 (2000), *quoting Pewitt v. Lorain Correctional Inst.*, 64 Ohio St.3d 470, 472 (1992). *Accord, Miner v. Witt,* 82 Ohio St. 237, 239 (1910). *See also State v. Lawless,* 2018-Ohio-1471, ¶ 18 (5th Dist.); *State v. Williams*, 2020-Ohio-77, ¶ 15 (5th Dist.).

**{¶17}** Although there are exceptions to the mootness doctrine, none apply in the case at bar. *See, e.g., In re Suspension of Huffer from Circleville High School*, 47 Ohio St.3d 12 (1989), paragraph one of the syllabus (noting the two exceptions to the mootness doctrine are when "the issues are capable of repetition, yet evading review" or the case "involves a matter of public or great general interest").

**{¶18}** Because Soto has completed the jail sentence imposed upon him, the case would ordinarily be considered moot under *St. Pierre v. United States*, 319 U.S. 41 (1943). However, both the United States Supreme Court and the Ohio Supreme Court have since retreated from this absolute rule. *See State v. Morrow*, 2022-Ohio-1089, ¶ 22 (5th Dist.).

**{¶19}** With respect to mootness in misdemeanor cases[3], the Ohio Supreme Court has held,

> The completion of a sentence is not voluntary and will not make an appeal moot if the circumstances surrounding it demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide.

*Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 390 (2011), paragraph one of the syllabus.

**{¶20}** The Court in *Lewis* found evidence of intent to challenge the criminal charge,

> [Lewis] sought a stay of execution of sentence to avoid the appeal becoming moot, but the trial court denied the stay. Lewis then paid the fine and costs and filed a notice of appeal, but did not seek a stay from the appellate court. These circumstances demonstrate that Lewis neither acquiesced in the judgment nor abandoned his right to appeal and thus did not voluntarily complete the sentence pending appeal. Accordingly, Lewis

---

[3] *See, State v. Golston*, 71 Ohio St.3d 224 (1994) holding felony convictions are not mooted by satisfaction of the sentence because of the substantial restrictions imposed by law on convicted felons.

had a substantial interest in the appeal, and the appellate court had subject matter to decide, and the appeal did not become moot.

*Id.*

{¶21} In *Sibron v. New York*, 392 U.S. 40 (1968), the United State Supreme Court recognized two exceptions to the doctrine of mootness. The first exception applies when "'(i)t does not appear that petitioner could not have brought his case to this Court for review before the expiration of his sentence.'" 392 U.S. at 52, *quoting St. Pierre,* 319 U.S. 43. The Court noted, "There was no way for Sibron to [appeal] his case here before his six-month sentence expired." *Id.*

{¶22} As to the second exception, even when a defendant has voluntarily completed the sentence, the case is not moot if a collateral disability results. *Sibron,* 392 U.S. at 54-55; *State v. Wilson*, 41 Ohio St.2d 236, 238 (1975). *But* s*ee State v. Berndt*, 29 Ohio St.3d 3, 4 (1987) (Enhanced penalty on subsequent conviction for the same crime is not a collateral disability).

{¶23} Here, Soto contested the charges, was tried before a jury, and timely appealed his convictions. He also attempted to obtain a stay of execution both in the trial court and in this Court prior to the expiration of his sentence. *Cleveland Hts. v. Lewis*, 129 Ohio St.3d at 390; *Morrow,* 2022-Ohio-1089 at ¶¶ 26-27.

{¶24} Therefore, Soto has a substantial interest in the appeal, this Court has subject matter to decide, and the appeal has not become moot.

### Standard of Appellate Review – Sufficiency of the Evidence

{¶25} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in

conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *United States v. Gaudin,* 515 U.S. 506, 509-510 (1995); *Hurst v. Florida*, 577 U.S. 92 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan,* 2023-Ohio-3800, ¶ 13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

{¶26} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259(1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *Walker,* 2016-Ohio-8295, ¶ 30. Thus, on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether the evidence, viewed in the light most favorable to the prosecution, would convince a rational trier of fact of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), *citing Jenks* at paragraph two of the syllabus. *See also, Walker,* 2016-Ohio-8295 at ¶ 31; *State v. Poutney*, 2018-Ohio-22, ¶ 19.

{¶27} We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 2006-Ohio-5283 ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). *Accord State v. Montgomery*, 2016-Ohio-5487, ¶ 74.

**Issue for Appellate Review**: Whether *the evidence, viewed in the light most favorable to the prosecution, would convince a rational trier of fact of Soto's guilt beyond a reasonable doubt of domestic violence and resisting arrest*

{¶28} The jury convicted Soto of knowingly causing a family or household member, N.W., to believe that Soto will cause imminent physical harm to her in violation of R.C. 2919.25(C). Soto's sole argument on appeal is that N.W. did not qualify as a "family or household member" under R.C. 2919.25(C), regardless of the nature of his relationship with her. *See* Appellant's brief at 10. Soto does not challenge the evidence that he knowingly, by threat of force, caused N.W. to believe that he would cause her imminent physical harm. *See* Appellant's brief at 10 – 11.

{¶29} R.C. 2919.25(F) provides:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

…

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶30} The elements of cohabitation are "(1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459 (1997), paragraph two of the syllabus. Factors that may support a sharing of familial or financial responsibilities include "provisions for shelter, food, clothing, utilities, and/or commingled assets." *Id.* at 465. Factors to consider as to consortium include "mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, [or] conjugal relations." *Id.* Notably, "[t]hese factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Id.*

{¶31} Here, N.W. testified that she and Soto had been in a romantic relationship and had lived together in her apartment for two years prior to the incident. In *State v. McGlothan*, 2014-Ohio-85, ¶ 15, the Supreme Court of Ohio held that when the state proves the defendant and the victim were in a romantic relationship and lived together for approximately one year, it need not separately demonstrate shared financial or familial responsibilities or consortium to establish cohabitation. *See also, State v. Martin*, 2016-Ohio-225, ¶ 67 (5th Dist.).

{¶32} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found beyond a reasonable doubt that Soto and N.W. were cohabitating at the time of the offense. We find, therefore, that the state met its burden of production regarding each element of the crime of domestic violence for which Soto was charged and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Soto's conviction.

**{¶33}** The jury also convicted Soto of recklessly, or by force, resisting or interfering with his lawful arrest in violation of R.C. 2921.33(A). Soto argues that the evidence was insufficient to establish that he used force or acted recklessly in resisting arrest. *See* Appellant's brief at 11.

**{¶34}** A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist. R.C. 2901.22(C).

**{¶35}** "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C. 2901.01(A)(1).

**{¶36}** Here, Officer Vespoint testified that while placing Soto under arrest, Soto "couldn't really keep his hands steady" and pulled away from the officer, turning his body back toward the victim. (T. at 76.) Another officer had to assist in placing Soto into the cruiser. The entire arrest was captured on the officer's body camera. (*Id.* at 79, State's Exhibit A.) Officer Vespoint testified he considered Soto to be resisting arrest when Soto broke free from the officer's grip. (*Id.* at 83.) This conduct satisfies the statutory definition of "force" under R.C. 2901.01(A)(1).

**{¶37}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found beyond a reasonable doubt that Soto recklessly or by force, resisted or interfered with his lawful arrest. We hold, therefore, that the state met its burden of production regarding each element of the crime

of resisting arrest for which Soto was charged and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Soto's conviction.

**Standard of Appellate Review –Manifest Weight of the Evidence**

{¶38} The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶39} When evaluating the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts in the evidence, thereby creating a manifest miscarriage of justice- even where the evidence of guilt is legally sufficient. *State v. Thompkins*, 78 Ohio St.3d at 386–387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶40} Manifest weight review focuses on the effect of the evidence in inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶ 83. In this context, an appellate court acts as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶ 25, citing *Thompkins.*

{¶41} Traditionally appellate courts have recognized a presumption in favor of the finder of fact when reviewing a manifest weight of the evidence challenge. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. This deference stems from the trier of fact's unique position to observe the witnesses' demeanor, gestures, and voice inflections- elements

critical in assessing credibility. *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶42} However, the Eight District Court of Appeals has recently observed in *State v. Reillo,* 2024-Ohio-3307, ¶ 20, *appeal allowed* 2025-Ohio-705 (Table), that *Eastly* arguably implied that the presumption from the civil manifest-weight review persists in criminal cases. *Id.* at ¶ 27. The Court emphasized that if an appellate court simply defers to the trier of fact's credibility determinations "there would be no difference between that and the sufficiency analysis, in effect merging the separate concepts of sufficiency and weight, as was once the standard for civil cases." *Reillo* at ¶ 23 (citations omitted). The court further noted: "If appellate panels defer to the trier of fact's credibility determinations, which resulted in the finding of guilt or there would not be an appeal, there would be no reason to advance a manifest-weight challenge." *Id. See also State v. Butler*, 2024-Ohio-5879, ¶ 27 (5th Dist.). Accordingly, as a thirteenth juror, an appellate court reviews de novo the trier of fact's credibility determinations.

{¶43} A manifest-weight challenge should be sustained only in "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist. 1983).

{¶44} Additionally, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2 - 4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**: Whether *the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

{¶45} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice.

{¶46} Although N.W.'s credibility was central to the case, her testimony was consistent and detailed. She described the threats Soto made and her fear of imminent harm. Notably, even Soto's own witnesses confirmed aspects of N.W.'s testimony. We find no evidence in the record that suggests N.W. is mistaken, or otherwise should not be believed.

{¶47} As to the resisting arrest conviction, Officer Vespoint testified that Soto pulled away during the arrest and broke the officer's grip, requiring assistance from another officer to place him in the cruiser. The events were captured in real time on the video from the officer's body camera.

{¶48} The record contains no compelling evidence that weighs heavily against Soto's convictions. We find the greater amount of credible evidence produced at trial supports the jury's conclusion that Soto committed both offenses. Accordingly, we find no indication that the jury lost its way or ignored substantial evidence in reaching its verdict.

## Conclusion

{¶49} Soto's convictions for domestic violence and resisting arrest are supported by sufficient evidence and are not against the manifest weight of the evidence.

**{¶50}** Soto's sole assignment of error is overruled.

**{¶51}** The judgment of the Tuscarawas County Court is affirmed.

By Popham, J.,

King, P.J., and

Gormley, J., concur

[Cite as *State v. Soto*, 2025-Ohio-1788.]