[Cite as *State v. Mumaw*, 2026-Ohio-29.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025-CA-00048 |
| Plaintiff – Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Licking County Municipal Court, Case No. 24CRB01692 |
| GAGE MUMAW | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry:January 7, 2026 |

**BEFORE:**   WILLIAM B. HOFFMAN, P.J., KEVIN W. POPHAM, J., DAVID M. GORMLEY, Appellate Judges

**APPEARANCES:** JACKSON M. SAVAGE, for Plaintiff-Appellee; CHRIS BRIGDON for Defendant-Appellant

OPINION

*Popham, J.*

{¶1}   Appellant Gage Mumaw appeals his conviction following a jury trial in the Licking County Municipal Court.  Appellee is the State of Ohio.  For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}   On December 20, 2024, Mumaw was charged by criminal complaint with domestic violence, a misdemeanor of the first-degree, in violation of R.C. 2919.25(A).  His jury trial began on June 30, 2025.  The following testimony is adduced from the trial.

{¶3} K.M. met Mumaw in October of 2023. They moved into an apartment together on February 3, 2024, but were evicted in August of 2024. K.M. and Mumaw then moved into a basement apartment in Newark, Ohio, located on property owned by Mumaw's mother, where they lived together until the incident on December 11, 2024.

{¶4} K.M. testified that on December 11, 2024, Mumaw woke up "angry" after reading a text she had sent her friend the night before. In the text, K.M. expressed concern that Mumaw was going to kick her out of the apartment. Mumaw began yelling at K.M. and "accusing [her] of stuff." K.M. called her father to pick her up and began packing her belongings while Mumaw continued yelling.

{¶5} According to K.M., Mumaw paced around, yelling, and followed her into the bedroom closet as she gathered clothes. K.M. was facing toward the back of the closet, placing clothes in a bag, and looking toward the left corner of the closet. K.M. testified that Mumaw shoved her from behind with his hands on her back and shoulders. When Mumaw shoved her, K.M. fell into a plastic tub, hit her head on a shelf, and scraped her arm. K.M. described the shove as involving a "decent amount" of force because "it scraped my arm up and put a big knot on the back of my head." K.M. stated she fell because Mumaw shoved her, not because she lost her balance, and that she scraped her arm when trying to catch herself.

{¶6} K.M. denied physically fighting with Mumaw and stated she did not hit him, though she admitted yelling at him. K.M. did not call 911. However, when K.M.'s mother called to check on her and heard Mumaw screaming, she contacted police to request a welfare check. When officers arrived, K.M. described the incident and showed them the closet where the incident occurred.

{¶7} On December 11, 2024, Officer Kenneth Lloyd of the Newark Police Department was dispatched to the apartment. Lloyd testified that K.M. appeared "very distraught." Mumaw had left the apartment by the time Lloyd arrived. Lloyd identified two photographs and his bodycam footage, which were admitted into evidence.

{¶8} Mumaw testified on his own behalf and denied waking up yelling on December 11, 2024. He testified that he woke at approximately 7:00 a.m. to play video games online. Mumaw's version of events was he told K.M. he wanted her to leave, but she refused, stating she had nowhere to go. Mumaw admitted they yelled at each other and that he "said something and made her mad," after which, according to Mumaw, K.M. hit him three times in the face with an open hand. Mumaw stated he pushed K.M. "to create some distance" because he was trying to get away. Mumaw testified, "yea, I just wanted my jacket out of the closet." After Mumaw retrieved his jacket from the closet, he left the apartment. Mumaw stated he did not intend to harm K.M. when he pushed her.

{¶9} On cross-examination Mumaw admitted that when he entered the closet doorway to get his jacket K.M. was already inside, and she had no way to leave except by passing through the doorway where he was standing.

{¶10} Defense counsel moved for acquittal under Criminal Rule 29, which the trial court denied. The jury found Mumaw guilty. In a June 30, 2025, sentencing entry, the court imposed a 30-day jail sentence and court costs. The trial court ordered Mumaw to report to the Licking County Justice Center on July 11, 2025, to begin serving his sentence. On July 7, 2025, Mumaw filed a motion to stay his sentence pending appeal. On July 8, 2025, the trial court denied Mumaw's motion to stay. On July 9, 2025, Mumaw filed another motion, which he captioned "Emergency Motion to Extend Report-to-Jail

Date," again asking the trial court to stay his sentence pending appeal or extend his surrender date to July 25, 2025. The trial court denied the motion. The trial court also denied Mumaw's July 9, 2025, "Emergency Motion to Modify Sentence."

{¶11} Mumaw appeals his conviction, and assigns the following as error:

{¶12} "I. THE TRIAL COURT ERRED IN ENTERING JUDGMENT UPON A GUILTY VERDICT FOR DOMESTIC VIOLENCE WHERE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Mootness Doctrine*

{¶13} Mootness is a jurisdictional question because courts are tasked with deciding adversarial legal cases and issuing judgments that can be carried into effect. *Fortner v. Thomas*, 22 Ohio St.2d 13, 13 (1970). Under the mootness doctrine, courts will not decide cases in which there is no longer an actual legal controversy between the parties. *In re A.G.*, 2014-Ohio-2597, ¶ 37. Because mootness is jurisdictional, a court must address it even if the parties do not raise the issue. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

{¶14} Because Mumaw has completed the jail sentence imposed upon him, the case would ordinarily be moot under *St. Pierre v. United States*, 319 U.S. 41 (1943). However, both the United States Supreme Court and the Supreme Court of Ohio have since retreated from this absolute rule. *See State v. Morrow*, 2022-Ohio-1089, ¶ 22 (5th Dist.).

{¶15} The Supreme Court of Ohio has held as follows with regard to mootness in misdemeanor cases:

The completion of a sentence is not voluntary and will not make an appeal moot if the circumstances surrounding it demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide.

*City of Cleveland Hts. v. Lewis*, 2011-Ohio-2673, paragraph one of the syllabus. The *Lewis* Court found the defendant did not acquiesce in the judgment and did not voluntarily complete the sentence pending appeal when he sought a stay of execution of sentence to avoid the appeal becoming moot after a jury trial. *Id.*

{¶16} In this case, Mumaw contested the charges, was tried before a jury, and timely appealed his conviction. He also attempted to obtain a stay of execution in the trial court prior to the expiration of his sentence. Therefore, Mumaw has a substantial interest in the appeal, this Court has subject matter to decide, and the appeal has not become moot. *State v. Soto*, 2025-Ohio-1788, ¶ 23 (5th Dist.); *State v. Morrow*, 2022-Ohio-1089, ¶ 26 (5th Dist.).

I.

{¶17} In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts as a thirteenth juror, and "after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction

on manifest-weight grounds should occur only in "the 'exceptional' case in which the evidence weighs heavily against conviction.'" *Id.*

{¶18} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." *Thompkins* at 387 (emphasis in original) (quotations and citation omitted). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

{¶19} Mumaw challenges the jury's guilty verdict on the basis of alleged inconsistences in K.M.'s testimony. He argues that these purported inconsistencies render his conviction against the manifest weight of the evidence. He further contends that, because K.M.'s only documented injury was a minor scrape, the conviction was against the manifest weight of the evidence.

{¶20} To prove a violation of R.C. 2919.25(A), the state was required to present evidence that Mumaw, "knowingly caused or attempted to cause physical harm to a family or household member." R.C. 2919.25(A). K.M. testified that she and Mumaw lived together in an apartment from February of 2024 to August of 2024. Both K.M. and Mumaw testified they lived together in the basement apartment of Mumaw's mother from August of 2024 to December 11, 2024. K.M. testified that on December 11, 2024, Mumaw

shoved her with a "decent amount" of force, causing her to fall into a plastic tub, strike her head on a shelf, scrape her arm, and develop a knot on the back of her head.

{¶21} Mumaw claims there were "multiple inconsistencies" in K.M.'s account, including how she was standing in the closet, the direction she fell, which part of her head struck the shelf, which part of her knee hit the tub, whether her knee was injured, and where Mumaw was standing when he shoved her. However, after reviewing the testimony, we find K.M.'s account consistent both internally and with the other evidence presented. K.M. explained that when Mumaw pushed her, she turned left while trying to catch herself, striking the right-rear portion of her head on the shelf. She then fell into a plastic tub. She testified that her knee was uninjured because the tub "crumpled." A photograph of the tub (Exhibit 2) corroborates this testimony. K.M. further explained that she did not report the bump on her head to police because it had not yet formed and was difficult to see due to her hairline.

{¶22} Additionally, Mumaw's own testimony corroborated key portions of K.M.'s account. He admitted that K.M. was already in the closet when he went to retrieve his jacket, that he was standing in the closet doorway when he pushed her, and that the only way for K.M. to leave the closet was through the doorway where he was positioned. Importantly, Mumaw admitted he pushed K.M.

{¶23} Further, even if inconsistent testimony had been presented, "[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence." *State v. Wolters*, 2022-Ohio-538, ¶ 20 (5th Dist.). In this case, any

inconsistencies do not rise to the level wherein the evidence weighs heavily against conviction.

{¶24} Mumaw relies on his own testimony in his manifest weight of the evidence challenge. Mumaw admitted he pushed K.M., but claimed he did so only to "create space" after K.M. hit him three times. "[A] conviction is not against the manifest weight of the evidence simply because the jury chose to believe the state's version of events" over the criminal defendant's account. *State v. Perry*, 2025-Ohio-2054, ¶ 79 (10th Dist.).

{¶25} Mumaw also argues that the minor nature of K.M.'s injuries – a scrape and a small bump that appeared days later – demonstrates the conviction was against the manifest weight of the evidence. However, R.C. 2901.01(A)(3) states that "'physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Even a minor injury … constitutes physical harm for purposes of the domestic violence statute …". *State v. Marrero*, 2011-Ohio-1390, ¶ 72 (10th Dist.). Moreover, "the victim of a domestic violence need not suffer actual physical harm in order to support a conviction under R.C. 2919.25(A)." *State v. Hopkins*, 2019-Ohio-522, ¶ 11(5th Dist.) An attempt to cause harm is sufficient. *Id.*; R.C. 2919.25(A).

{¶26} After viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the crime of domestic violence beyond a reasonable doubt. This is not the case where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. The jury verdict finding Mumaw guilty of domestic violence was not against the manifest weight of the evidence. Mumaw's assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Licking County Municipal Court  is affirmed.

Costs to Appellant, Gage Mumaw.

By: Popham, J.

Hoffman, P.J. and

Gormley J., concur